# United States District Court
## Northern District of Texas

UNITED STATES OF AMERICA

V.

VIVEK SHARMA

**WARRANT FOR ARREST**

CASE NUMBER: 3:13-cr-065-M-(04)

MAG. CASE NUMBER: 13-8110-WM

To: The United States Marshal
   and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ VIVEK SHARMA _____

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

[X] Sealed Indictment [ ] Information [ ] Complaint [ ] Order of court [ ] Violation Notice [ ] Probation Violation Petition

charging him or her with:

   Conspiracy to Commit Visa Fraud
   Wire Fraud

FILED by _____ D.C.

FEB 2 7 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

in violation of Title   18; 8; 18

United States Code, Section(s)

   371; 1324(a)(1)(A)(iv), 1324(a)(1)(B)(i) ; 1343; 2

Karen Mitchell, U.S. District Court Clerk
Name and Title of Issuing Officer

_Karen Mitchell_
Signature of Issuing Officer

U.S Magistrate Judge Paul D. Stickney

Feb 20, 2013
Date

Dallas, TX
Location

s/ Y. Pace

(By) Deputy Clerk

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2013 FEB 20  PM 3: 07

DEPUTY CLERK _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3. - 1 3 CR - 0.6 5 - M |
| | § | |
| ATUL NANDA (1) | § | |
| JITEN "JAY" NANDA (2) | § | |
| SIVA SUGAVANAM (3) | § | |
| VIVEK SHARMA (4) | § | |
| ROHIT MEHRA (5) | § | |
| MOHAMMAD KHAN (6) | § | |

INDICTMENT

The Grand Jury Charges:

Count One
Conspiracy to Commit Visa Fraud
(Violation of 18 U.S.C. § 371; 8 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(1)(B)(i))

A.    Introduction

At all times material to this Indictment:

1.    Dibon Solutions (Dibon) is an information technology consulting company

whose main office is located at 2009 Chenault Drive, Suite 100, Carrollton, Texas.

Dibon is a family operation that was created by the Nanda family. Two brothers, **Atul**

**Nanda** and **Jiten "Jay" Nanda**, helped create and establish the corporation. The Nanda

brothers, along with **Siva Sugavanam**, **Vivek Sharma**, **Rohit Mehra**, and **Mohammad**

Indictment – Page 1

**Khan** (the conspirators) have used Dibon to commit fraud through the H1-B visa program.

B.    The H-1B Visa Program

2.    The H1-B visa program allows businesses in the United States, like Dibon, to temporarily employ foreign workers with specialized or technical expertise in a particular field such as accounting, engineering, or computer science.

3.    Before hiring such a worker, the employer must first obtain approval from the U.S. Department of Labor (DOL) by filing a Labor Condition Application (LCA), ETA Form 9035E.  In the LCA, the employer represents that it intends to employ a specified number of foreign workers for specific positions for a particular period of time. The employer also makes representations regarding the rate of pay, work location, and whether the position is full-time.  The employer also agrees to pay the workers for non-productive time.  The employer must attest that the representations are true and accurate, and the LCA provides a warning that false representations may lead to criminal prosecution.  Except in limited circumstances, the LCA must be filed electronically. Upon filing, the employer is required by regulation to print and sign a copy.  The employer is further required to maintain the signed copy in its files.

4.    Upon approval of the LCA, the employer must then obtain permission from the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services (CIS), to hire a specific individual.  This approval is obtained by filing a Petition for a Nonimmigrant Worker, Form I-129, and paying certain fees.  In this petition, the employer provides biographical information regarding the specific worker to be

Indictment – Page 2

employed. The employer also provides much of the same information that is on the LCA, including job title, the specific type of position for which the worker is hired, work location, pay rate, dates of intended employment, and whether the position is full-time. This petition is signed under penalty of perjury, and the employer must certify that the information submitted is true and correct.

5.      Once CIS approves this petition, the worker can apply for a visa at a U.S. consulate or embassy overseas. If the worker is already in the United States legally, his or her immigration status can be changed automatically.

6.      Once a visa is issued or adjustment of status occurs, the worker possesses lawful nonimmigrant status (meaning the worker is entitled to stay in the United States) and may reside in the United States and work for the employer until the visa expires or his or her government approved employment with the company ends, whichever occurs first. The worker may not immigrate, or permanently reside, in the United States under this type of visa.

7.      For a worker entering the United States from abroad, the employer must start paying the worker once he or she enters into employment or within 30 days of admission to the United States, whichever is sooner. For a worker already in the United States, the employer must begin paying the worker upon start of employment or within 60 days of approval of the visa petition, whichever is sooner.

8.      If the worker is dismissed before the visa expires, the employer must send notice to CIS and pay for the worker to return to his or her native country.

C.   Dibon's H-1B Visa Fraud Scheme

9.   As part of their scheme, the conspirators recruited foreign workers with computer expertise who wanted to work in the United States.  The conspirators sponsored the workers' H-1B visas with the stated purpose of working at Dibon headquarters in Carrollton, Texas, but, in fact, required the workers to provide consulting services to third-party companies located elsewhere.  Contrary to the representations made by the conspirators to the workers (and the government), the conspirators paid the workers only when the conspirators placed the workers at a third-party company and only if the third-party company actually paid Dibon first for the workers' services.  Additionally, in Dibon's visa paperwork, the conspirators falsely represented that the foreign workers had full-time positions and were paid an annual salary, as required by regulation to secure the visas.

10.   This scheme provided the conspirators with a labor pool of inexpensive, skilled foreign workers who could be used on an "as needed" basis.  The scheme was profitable because it required minimal overhead and Dibon could charge significant hourly rates for a computer consultant's services.  Accordingly, the conspirators earned a substantial profit margin when a consultant was assigned to a project and incurred few costs when a worker was without billable work.

11.   This scheme is known as "benching."  Benching is defined by U.S. Department of Labor (DOL) as "workers who are in nonproductive status due to a decision by the employer, such as lack of work."  Dibon actively recruited H1-B workers and "benched" them.

Indictment – Page 4

12.     Dibon's "benching" scheme was facilitated by the conspirators use of the company as a staffing company.  Dibon employed H-1B workers to perform services with third-party companies.  The design of the H-1B system intended for the H-1B worker to perform services for the petitioning company, i.e. Dibon.  In fact, regulations required that a petitioning company inform the government in the LCAs and H-1B petitions if the workers were assigned to a different location than the petitioning company's address—which Dibon did not do.  Moreover, as an intermediary company, Dibon claimed that jobs existed with third-party companies when, in fact, Dibon had not yet secured contracts with these companies; thus, Dibon filed false Labor Condition Applications (LCA)s with the DOL requesting H1-B workers for positions that did not exist.

13.     Defendants **Atul Nanda** and **Jay Nanda** directed Dibon.  **Siva Sugavanam** was the chief recruiter of foreign workers for H1-B visas and was responsible for training other recruiters.  **Vivek Sharma,** the office manager for Dibon, coordinated placement of benched workers with third-party contracts and kept track of benched employees.  **Rohit Mehra,** another recruiter, recruited employees for the bench and transported benched employees to and from Dibon headquarters.  **Mohammad Khan** handled the bookkeeping for Dibon and issued payroll checks to employees.

D.     The Conspiracy

14.     From at least on or about February 2008 through February 2011, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendants, **Atul Nanda, Jiten "Jay" Nanda**, **Siva Sugavanam, Vivek Sharma, Rohit Mehra,** and

Indictment – Page 5

**Mohammad Khan**, conspired, combined, confederated, and agreed, with others known and unknown, to:

(a)  Encourage and induce aliens to reside in the United States, knowing, and in reckless disregard of the fact, that such residence was and would be in violation of law, for purposes of financial gain, contrary to Title 8, United States Code, Sections 1324(a)(1)(A)(iv), 1324(a)(1)(B)(i). (VISA FRAUD)

(b)  For the purposes of executing this fraudulent scheme, did cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described in each count below, contrary to Title 18, United States Code, Section 1343. (WIRE FRAUD)

E.    Manner and Means

15.    It was part of the conspiracy that Dibon would and did seek and recruit H1-B workers for the bench for the purposes of financial gain.

16.    It was part of the conspiracy that one or more coconspirators would and did submit or cause to be submitted one or more Labor Condition Application, Form ETA 9035, to the U.S. Department of Labor, falsely representing that Dibon had a temporary need for full-time workers and that it would pay nonimmigrant workers for all hours worked and for any nonproductive time.

17.    It was part of the conspiracy that one or more coconspirators would and did submit or cause to be submitted one or more Petition for Non-Immigrant Worker, Form I-129, falsely representing that Dibon would employ a nonimmigrant worker in a full time position.

Indictment – Page 6

18.     It was part of the conspiracy that one or more coconspirators would and did refuse to employ on a full time basis one or more nonimmigrant workers following approval of the Form I-129.

19.     It was part of the conspiracy that one or more coconspirators would and did refuse to pay one or more nonimmigrant workers following approval of the Form I-129. It was also part of the conspiracy that one or more coconspirators would and did encourage one or more nonimmigrant workers to remain in the United States after the invalidation of their visa through the benching process by requiring them to find work for themselves for the benefit of Dibon.

20.     It was part of the conspiracy that one or more coconspirators would and did require one or more nonimmigrant workers to sign blank forms requesting an unpaid leave of absence.

21.     It was part of the conspiracy that one or more coconspirators did enter into one or more consulting agreements with third party companies wherein Dibon agreed to provide technology consulting services.

22.     It was part of the conspiracy that one or more coconspirators would and did hire one or more nonimmigrant workers on an as needed basis to perform technology consulting services for one or more third party companies.

F.     Overt Acts

23.     **Siva Sugavanam** and **Rohit Mehra**, along with other Dibon recruiters, at the direction of **Jiten "Jay" Nanda** and **Atul Nanda**, recruited individuals to work as H-1B employees during the length of the conspiracy. **Vivek Sharma**, as the office

Indictment – Page 7

manager, encouraged additional or less recruitment to achieve the desired "bench" rate at the direction of **Jiten "Jay"** and **Atul Nanda**. **Mohammad Khan** removed benched employees from payroll and health benefits and paid reduced salaries to benched employees at the direction of **Jiten "Jay"** and **Atul Nanda**.

24. On or about February 2008 through on or about October 2008, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched M.V. while encouraging M.V. to remain in the United States to find work by securing a contract with a third-party company for the benefit of Dibon. **Mohammad Khan** did not pay M.V. the required salary while he was "benched," at **Atul Nanda's** direction.

25. On or about March 2008, **Siva Sugavanam**, at the direction of **Atul Nanda**, recruited N.M. for an H-1B position with Dibon. On or about March 31, 2008, **Atul Nanda** directed the filing of a Labor Condition Application (Form ETA 9035E). On or about April 1, 2008, **Atul Nanda** directed the filing of a Form I-129, H-1B petition on behalf of N.M. This petition listed the position as a full time job at a fixed salary. On or about January 2009, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched N.M. while encouraging N.M. to remain in the United States to be placed in another contract position with a third-party company. **Mohammad Khan** did not pay N.M. the required salary while he was "benched," at **Atul Nanda's** direction.

26. On or about March 2008, **Siva Sugavanam**, at the direction of **Atul Nanda**, recruited S.R. for an H1-B position with Dibon. On or about March 31, 2008, **Atul Nanda** directed the filing of a Labor Condition Application (Form ETA 9035E). On or about April 1, 2008, **Atul Nanda** directed the filing of a Form I-129, H-1B petition

on behalf of S.R. This petition listed the position as a full time job at a fixed salary. On or about February 2009, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched S.R. while encouraging S.R. to remain in the United States for the benefit of Dibon. **Mohammad Khan** did not pay S.R. the required salary while he was "benched," at **Atul Nanda's** direction.

27.     On or about May 2008 through on or about March 2009, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched S.P. while encouraging S.P. to remain in the United States to find work by securing a contract with a third-party company for the benefit of Dibon. **Mohammad Khan** did not pay S.P. the required salary while he was "benched," at **Atul Nanda's** direction.

28.     On or about 2007, **Siva Sugavanam,** at the direction of **Atul Nanda,** recruited U.T. for an H-1B position with Dibon. On or about June 16, 2008, **Atul Nanda** directed the filing of a Labor Condition Application (Form ETA 9035E). On or about June 19, 2008, **Atul Nanda** directed the filing of a Form I-129, H-1B petition, for an extension of H-1B status, on behalf of U.T. This petition listed the position as a full time job at a fixed salary. On or about May 2008, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched U.T. while encouraging U.T. to remain in the United States for the benefit of Dibon. **Mohammad Khan** did not pay U.T the required salary while he was "benched," at **Atul Nanda's** direction.

29.     On or about June 2008 through on or about December 2008, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched K.B. while encouraging K.B. to remain in the United States to find work by securing a contract with a third-party company for

the benefit of Dibon. **Mohammad Khan** did not pay K.B. the required salary while he was "benched," at **Atul Nanda's** direction.

30.    On or about June 2008 through on or about January 2009, **Atul Nanda, Siva Sugavanam,** and **Vivek Sharma** benched V.V. while encouraging V.V. to remain in the United States to find work by securing a contract with a third-party company for the benefit of Dibon. **Mohammad Khan** did not pay V.V. the required salary while he was "benched," at **Atul Nanda's** direction.

31.    On or about July 16, 2010, **Jay Nanda** directed the filing of a Labor Condition Application (Form ETA 9035E). On or about August 16, 2010, **Jay Nanda** filed a Form I-129, H-1B petition on behalf of M.G. This petition listed the position as a full time job at a fixed salary. On or about September 2010, **Atul Nanda, Jay Nanda, Siva Sugavanam,** and **Vivek Sharma** benched M.G. while encouraging M.G. to remain in the United States for the benefit of Dibon. **Mohammad Khan** did not pay M.G. the required salary while he was "benched," at **Atul Nanda's** direction.

<u>Count Two through Eleven</u>
Wire Fraud
(Violation of 18 U.S.C. § 1343; 18 U.S.C. § 2)

32.    The Grand Jury incorporates by reference all allegations stated in Count One of this Indictment as if fully set forth here.

33.    For each count below, on or about the date indicated, in the Dallas Division of the Northern District of Texas and elsewhere, **Atul Nanda, Jiten "Jay" Nanda, Siva Sugavanam, Rohit Mehra,** and **Vivek Sharma,** defendants, for the purpose of executing

Indictment – Page 10

the foregoing scheme and artifice to defraud, and to obtain money, by means of false pretenses, representations and promises, did knowingly and intentionally transmit and cause to be transmitted in interstate commerce by wire communication, to wit: electronic mail (email) from Carrollton, Texas, located in Dallas County, Texas, through the servers of internet service providers located outside Texas, to the out-of-state entity indicated for each count below, certain writings, signs, and signals for the purpose of executing said scheme.

| Count | Out-of-State Entity | Transmitted Document | Date of Electronic Transmission |
|---|---|---|---|
| 2 | Department of Labor | Labor Condition Application (FORM ETA 9035E) for U.T. | June 16, 2008 |
| 3 | United States Citizenship and Immigration Services | Form I-129, H-1B application for U.T. | June 19, 2008 |
| 4 | Department of Labor | Labor Condition Application (FORM ETA 9035E) for N.M. | March 31, 2008 |
| 5 | United States Citizenship and Immigration Services | Form I-129, H-1B application for N.M. | April 1, 2008 |
| 6 | Department of Labor | Labor Condition Application (FORM ETA 9035E) for S.R. | March 31, 2008 |
| 7 | United States Citizenship and Immigration Services | Form I-129, H-1B visa for S.R. | April 1, 2008 |
| 8 | Department of Labor | Labor Condition Application (FORM ETA 9035E) for A.D. | March 31, 2008 |
| 9 | United States Citizenship and Immigration Services | Form I-129, H-1B visa for A.D. | April 3, 2008 |

| Count | Out-of-State Entity | Transmitted Document | Date of Electronic Transmission |
|---|---|---|---|
| 10 | Department of Labor | Labor Condition Application (FORM ETA 9035E) for M.G. | July 16, 2010 |
| 11 | United States Citizenship and Immigration Services | Form I-129, H-1B visa for M.G. | August 16, 2010 |

In violation of 18 U.S.C. § 1343; 18 U.S.C. § 2.

Forfeiture Notice
(Pursuant to 18 U.S.C. § 982(a)(6))

34.    The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(6).

35.    Pursuant to Title 18, United States Code, Section 982(a)(6), upon conviction of an offense in violation of Title 18, United States Code, Section 1324, and conspiracy to commit such an offense, the defendants, **Atul Nanda**, **Jiten "Jay" Nanda**, **Siva Sugavanam**, **Vivek Sharma**, **Rohit Mehra**, and **Mohammad Khan**, shall forfeit to the United States of America any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense of which the defendants are convicted, any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the defendants are convicted, and any property, real or personal, used to facilitate or intended to be used to facilitate the commission of the offense of which the defendants are

convicted. The property to be forfeited includes, but is not limited to, the following: real

property located at 5119 Burkett Drive, Frisco, Texas 75034, real property located at

4549 Biltmore Drive Frisco, Texas 75034, real property located at 474 Peninsula Drive,

Little Elm, Texas 75068, 2003 Hyundai Accent VIN number KMHCF35C23U262563,

2007 Land Rover Range Rover VIN number SALSH234X7A112099, 2007 Toyota

Camry VIN number 4T1BE46K27U108225, 2001 Plymouth Prowler VIN number

1P3EW65G11V702071, Bank of Texas Account Number 8092127972, Bank of Texas

Account Number 8091419055, Bank of Texas Account Number 8090957946, Bank of

Texas Account Number 8092123561, Bank of Texas Account Number 8092873530, and

Compass Bank Account Number 17305093.

     36.    If any of the property described above, as a result of any act or omission

of the defendants:

       a.    cannot be located upon the exercise of due diligence;

       b.    has been transferred or sold to, or deposited with, a third party;

       c.    has been placed beyond the jurisdiction of the court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be divided

           without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States

Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

Indictment – Page 13

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
CYNTHIA D. GOODMAN
Special Assistant United States Attorney
Texas Bar No. 24055567
1100 Commerce Street, Third Floor
Dallas, TX 75242
Telephone: 214.659.8600
Facsimile: 214.659.8800
Email: cynthia.goodman@usdoj.gov

PAUL YANOWITCH
Assistant United States Attorney
Illinois Bar No. 6188269
1100 Commerce Street, Third Floor
Dallas, TX 75242
Telephone: 214.659.8600
Facsimile: 214.659.8800
Email: paul.yanowitch@usdoj.gov